Louis Pechman
Lillian M. Marquez
Pechman Law Group PLLC
488 Madison Avenue – 11th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
marquez@pechmanlaw.com

Arthur Morrison
Morrison Law Offices
1325 Avenue of the Americas, 27th Floor
New York, New York 10019
Tel.: (914) 980-7244
lawnyu63@gmail.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
SOHEL A. CHOWDHURY and ALI SK. LIAKAT,                              :
                                                                    :
                                Plaintiff,                          :
                                                                    :         **AMENDED**
                    -against-                                       :         **COMPLAINT**
                                                                    :
BRIONI AMERICA, INC. d/b/a BRIONI, BRIONI                           :         **16-CV-344 (VSB)(HBP)**
AMERICA HOLDING, INC. and DENNY CRUZ,                               :
                                                                    :
                                Defendants.                         :
------------------------------------------------------------------- X

Plaintiffs Sohel A. Chowhury ("Chowdhury") and Ali Sk. Liakat ("Liakat") (collectively, "plaintiffs"), by their attorneys Pechman Law Group PLLC, and Morrison Law Offices, complaining of defendants Brioni America, Inc. d/b/a Brioni, Brioni America Holding, Inc., and Denny Cruz (collectively, "defendants"), allege:

## NATURE OF THE ACTION

1.   Throughout their employment, Chowdhury and Liakat regularly delivered goods purchased at Brioni retail stores in Manhattan to customers after hours, but were not compensated for these hours worked in excess of forty at the rate of one and one-half times their regular hourly wage rate.

2. Particularly after Denny Cruz, who is of Dominican heritage, became plaintiffs' supervisor, defendants engaged in discriminatory conduct against plaintiffs based on their Bangladeshi national origin, Muslim faith, and Bengali ethnicity.

3. Plaintiffs complained about defendants' failure to compensate the overtime hours he worked off-the-clock, delivering Brioni purchases to customers, and defendants terminated Chowdhury's employment in retaliation for his complaints. After plaintiffs filed the original pleading in this action, defendants also retaliated against Liakat by, *inter alia*, decreasing and erratically changing his scheduled hours.

4. Over the course of the last year, following Cruz's hiring, Defendants have targeted their Bangladeshi, Muslim, and Bengali employees, including plaintiffs, issuing unfair and baseless warnings of their job performance.

5. Plaintiffs seek injunctive and declaratory relief, compensation for unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs as a result of defendants' systematic violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA"). Plaintiffs also seek actual and punitive damages for defendants' unlawful, discriminatory acts, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Law § 8-101, *et seq.* ("NYCHRL").

## JURISDICTION

6. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) (FLSA), § 1331, and § 1337. This Court also has supplemental jurisdiction over plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. Events giving rise to this action occurred at Brioni retail stores located, and operated by defendants, in the Southern District of New York.

8. Pursuant to NYLL § 215(2)(b), upon the filing of this Amended Complaint, plaintiffs will serve a copy of the Amended Complaint on the New York State Office of the Attorney General.

9. Pursuant to Section 8-502(c) of the NYCHRL, upon the filing of this Amended Complaint, plaintiffs will serve a copy of the Amended Complaint on the New York City Commission on Human Rights and the Office of the New York City Corporation Counsel.

## THE PARTIES

**Plaintiffs**

10. Chowdhury resides in Queens, New York.

11. Chowdhury is originally from Bangladesh, practices Islam, and is Bengali, a major ethnic group in Bangladesh.

12. Defendants employed Chowdhury in the Operations Support Department of Brioni stores in Manhattan, from February 27, 2006 through December 11, 2015.

13. Liakat resides in Queens, New York.

14. Liakat is originally from Bangladesh, practices Islam, and is Bengali.

15. Defendants have employed Liakat in the Operations Support Department of Brioni stores in Manhattan, since 1999.

16. Throughout their employment, plaintiffs were employees engaged in commerce or in the production of goods for commerce on behalf of defendants.

**Defendant Brioni America, Inc.**

17. Defendant Brioni America, Inc. is a New York corporation formerly known as Brioni Retail New York, Inc., that owns, operates, and does business as Brioni.

18. During the relevant period, Brioni America, Inc. operated retail stores in Manhattan at 55 East 52nd Street, New York, NY 10022, and at 57 East 57th Street, New York, NY 10022. Currently, the only Brioni store operating in Manhattan is located at 688 Madison Avenue, New York, NY 10065.

19. Brioni America, Inc. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

20. Brioni America, Inc. had an annual gross volume of sales in excess of $500,000 from 2010 through 2016.

21. Brioni America, Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

**Defendant Brioni America Holding, Inc.**

22. Brioni America Holding, Inc. is a New York corporation, formerly known as Brioni Roman Style USA Corp., that owns 100 percent of Brioni America, Inc.

23. Brioni America Holding, Inc. is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

24. Brioni America Holding, Inc. had an annual gross volume of sales in

excess of $500,000 from 2010 through 2016.

25.     Brioni America Holding, Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

26.     Brioni America, Inc. and Brioni America Holding, Inc. share management and employees.

27.     Brioni America, Inc. and its parent company, Brioni America Holding, Inc., (collectively, "Brioni") constitute a single enterprise that jointly employed plaintiffs.

**Defendant Denny Cruz**

28.     Denny Cruz is of Dominican heritage and is a New York resident.

29.     After Cruz began working as plaintiffs' supervisor in approximately August 2015, Cruz hired and fired employees of Brioni's Operations Support Department, disciplined those employees, and directed the manner in which those employees performed their daily duties.

30.     For example, Cruz issued disciplinary warnings to plaintiffs and fired Chowdhury in 2015.

31.     Cruz exercised sufficient control over Brioni's operations to be considered plaintiffs' employer under the FLSA and NYLL.

**FACTUAL ALLEGATIONS**

32.     Founded in Rome in 1945, the brand Brioni is known for its refined made-to-measure men's suits, ready-to-wear collections and leather goods.

33.     In 2014, the French holding company Kering acquired Brioni, which has owned and operated stores located at both 52nd Street and 57th Street in Manhattan, New York.

34. Throughout their employment, Chowdhury and Liakat regularly worked at Brioni's 52nd Street and 57th Street retail stores in Manhattan, in their Operations Support Department.

35. When the 52nd Street location closed at the end of 2013, Chowdhury and Liakat worked solely at Brioni's 57th Street location.

**Defendants' Failure to Compensate Plaintiffs' Overtime Hours**

36. Chowdhury and Liakat worked at these retail locations five to six days per week, from 9:00 a.m. to approximately 6:30 p.m., with an hour-long lunch break, totaling approximately 42.5 to 51 hours per workweek.

37. Chowdhury and Liakat recorded their work hours by clocking in and out upon their entry and departure from the Brioni retail locations.

38. Their main duties consisted of maintaining and cataloguing the stores' inventory, receiving and storing merchandise shipments, and coordinating order shipments.

39. Neither Chowdhury nor Liakat exercised any control over other Brioni employees.

40. At the end of each workday, Brioni salespersons handed Chowdhury, Liakat, and a third Operations Support member, Bahar Chowdhury, their individual delivery receipt books.

41. Each salesperson's delivery book contained receipts with the name and address of Brioni clients to whom packages were to be delivered that evening.

42. Plaintiffs also received prepaid Metro Cards for use on public transit to complete the deliveries.

43. Chowdhury and Liakat clocked out upon receiving the packages corresponding to the delivery books and their Metro Cards.

6

44. Chowdhury and Liakat spent 2.5 to 3 hours daily, approximately 13 hours per week, delivering packages to Brioni customers after clocking out (plaintiffs' "off-the-clock deliveries").

45. Defendants did not pay plaintiffs for their off-the-clock deliveries.

46. Defendants failed to compensate Chowdhury and Liakat for the off-the-clock hours worked over forty per workweek at one and one-half times their regular hourly wage rate.

47. Throughout their employment, Chowdhury and Liakat complained to their supervisors, first Paul Durana, then Kevin Hewitt and Cruz, about the overtime hours they worked making off-the-clock deliveries and requested compensation for those hours.

48. Brioni did not correct Chowdhury's and Liakat's time records to reflect all their hours worked or compensate them for their unpaid work delivering Brioni packages.

49. Throughout plaintiffs' employment, defendants did not furnish plaintiffs with wage notices annually and whenever there was a change in their rate of pay.

**Brioni's Discriminatory Practices and Retaliation**

50. In or about August 2015, Denny Cruz replaced Kevin Hewitt as plaintiffs' direct supervisor.

51. At the time, Brioni employed six employees of Bangladeshi origin and Muslim faith, including plaintiffs, Liakat's nephew, and Liakat's son-in-law.

52. Under Hewitt, plaintiffs were permitted to attend Friday prayers at a local mosque together during their hour-long lunch break.

53. Chowdhury and Liakat received positive performance reviews throughout their tenure at Brioni prior to Cruz's hiring.

7

54. Immediately after he began working at Brioni, Cruz started criticizing Chowdhury's and Liakat's performance.

55. Cruz reprimanded Chowdhury and Liakat for attending mosque together on Fridays, though it was during their lunch break.

56. In September 2015, Chowdhury verbally complained to Hewitt and Cruz about defendants' failure to compensate them for all their overtime hours worked.

57. Cruz's treatment of plaintiffs then progressively worsened. In September 2015, Cruz issued Chowdhury a written warning regarding his tardiness to work on three occasions that month.

58. In October 2015, Cruz issued another warning to Chowdhury, faulting him for being unaware of a box of merchandise that a third-party hired by Brioni had transferred from the 52nd Street to the 57th Street store and left unopened. Liakat was also disciplined for this alleged oversight.

59. On the same day in October 2015, Cruz reprimanded Chowdhury in writing for failing to track consignment items during the closure of the 52nd Street store (which occurred prior to Cruz's employment at Brioni).

60. Chowdhury was not responsible for tracking these consignments.

61. No other employee in the Operations Department was disciplined for the alleged failure to track these consignment items.

62. On December 11, 2015, Cruz issued Chowdhury a final disciplinary letter, blaming Chowdhury for failing to select "signature required" on a merchandise delivery.

63. Another worker was responsible for processing the mailing label for that package.

64. Defendants did not discipline that worker or any other worker in the Operations Department for failing to select "signature required" when processing the mailing label.

65. On December 11, 2015, Chowdhury was terminated.

66. In a December 16, 2015 letter, Chowdhury responded to the final warning and prior warnings, and additionally complained about the unpaid overtime hours he worked.

67. Chowdhury was replaced with a Dominican man, Hazel.

**Post-Filing Conduct**

68. On February 8, 2016, plaintiffs filed the original complaint in this action, alleging that Brioni and Cruz failed to compensate them fully for their overtime hours worked and retaliated against them for complaining about overtime pay violations.

69. At some point thereafter, Cruz directed Hazel to dispose of a large number of the delivery receipt books in which Chowdhury and Liakat had documented their off-the-clock deliveries.

70. After this action was initiated, Defendants reduced Liakat's normal scheduled hours.

71. Defendants also made Liakat's schedule less predictable, changing it from week to week.

72. After Hazel quit, Cruz hired another worker of Dominican descent, Jonathan Hamilton, and placed him at the computer desk station Liakat usually occupied. Liakat, who is 56 years old, was now forced to stand during his lengthy shifts.

73. When Brioni changed its software for shipments, it failed to provide the same level of instruction on the new software to Liakat as provided to other employees.

74. In June 2016, Diondre St. Amand, Cruz's Caucasian supervisor, terminated Liakat's nephew, Milton Hyder, who is also of Bangladeshi descent and Bengali ethnicity and practices Islam.

75. Brioni replaced Hyder with a non-Muslim who is not of Bangladeshi descent.

76. In August 2016, Brioni terminated Liakat's son-in-law, Waqar Hasan, who is also of Bangladeshi descent and Bengali ethnicity and practices Islam.

77. In 2016, Brioni issued a warning to the only other Bengali other than Liakat who remains employed at Brioni, Sayed Rahman.

78. Brioni criticized Rahman's sales performance though his performance was unchanged from prior years.

79. No other salesperson at Brioni received similar warnings.

80. Defendants engaged in a pattern or practice of discriminating against employees of Bangladeshi national origin, Bengali ethnicity, and Muslim faith.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

81. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

82. Defendants are employers within the meaning of 29 U.S.C. § 201, *et seq*.

83. Defendants were required to pay plaintiffs one and one-half (1½) times their regular hourly wage rate for all hours worked in excess of forty in any given workweek pursuant to the overtime wage provisions of 29 U.S.C. § 207, *et seq*.

84. Defendants failed to pay plaintiffs the overtime wages to which they were entitled under the FLSA.

85. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs overtime wages.

86. Due to defendants' violations of the FLSA, plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

87. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

88. Defendants are employers within the meaning of the NYLL § 190 *et seq.*, 651(5), and 652, and supporting New York State Department of Labor ("NYDOL") Regulations, including, but not limited to, 12 N.Y.C.R.R. Part 146.

89. Under the NYLL and supporting NYDOL regulations, defendants were required to pay plaintiffs one and one half (1½) times their regular hourly wage rate for all hours worked in excess of forty per workweek.

90. Defendants failed to pay plaintiffs the overtime wages to which they were entitled under the NYLL.

91. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs overtime wages.

92. Due to defendants' willful violations of the NYLL, plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## THIRD CLAIM
### (FLSA – Retaliation)

93. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

94. Defendants are employers within the meaning of 29 U.S.C. § 201, *et seq.*

95. Plaintiffs engaged in protected activity by complaining to Defendants of Defendants' failure to compensate them for their after-hours deliveries.

96. In retaliation for Plaintiff Chowdhury's complaints, Cruz issued Chowdhury baseless disciplinary warnings and fired Chowdhury.

97. In retaliation for Plaintiff Liakat's filing of the original complaint in this action, Defendants lessened and unpredictably scheduled Liakat's work hours.

98. Defendants' retaliatory acts violated the FLSA.  29 U.S.C. § 215(a)(3).

99. For Defendants' unlawful retaliatory acts, plaintiffs are entitled to recover from defendants backpay, emotional distress damages, and liquidated damages, pursuant to 29 U.S.C. § 216.

## FOURTH CLAIM
### (NYLL – Retaliation)

100. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

101. Defendants are employers within the meaning of the NYLL § 190 *et seq.*, 651(5), and 652, and supporting New York State Department of Labor ("NYDOL") Regulations, including, but not limited to, 12 N.Y.C.R.R. Part 146.

102. Defendants' retaliatory acts violated NYLL § 215.

103. For Defendants' unlawful retaliatory acts, plaintiffs are entitled to recover from defendants backpay, liquidated damages, reasonable attorneys' fees and costs pursuant to NYLL § 215(2).

## FIFTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Annual Wage Notices)

104. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

105. The NYLL and Wage Theft Prevention Act ("WTPA"), as well as the NYLL's interpretative regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

106. From its enactment on April 9, 2011, through 2014, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

107. In violation of NYLL § 191, defendants failed to furnish each plaintiff, whenever there was a change to his rate of pay, and on or before February 1 of each year of employment through 2014, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

108. Due to defendants' violation of NYLL § 195(1), plaintiffs are entitled to recover from defendants liquidated damages of $50 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### SIXTH CLAIM
### (New York State Human Rights Law – Unlawful Discrimination)

109. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

110. Defendants are employers within the meaning of the Executive Law.

111. The NYSHRL prohibits an employer from discriminating against an individual because of his creed or national origin. N.Y. Exec. L. § 296.

112. Defendants subjected plaintiffs to unlawful discrimination based on their national origin and/or creed in violation of the New York Executive Law.

113. As a result of defendants' unlawful discriminatory acts, plaintiffs are entitled to back pay, front pay, compensatory damages, and pre- and post-judgment interest.

## SEVENTH CLAIM
### (New York State Human Rights Law – Aiding and Abetting)

114. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

115. The NYSHRL makes it an unlawful discriminatory practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. L. § 296(6).

116. Defendants aided, abetted, compelled, and/or coerced the discriminatory acts against plaintiffs.

117. Defendants' violation of the NYSHRL entitles plaintiffs to back pay, front pay, compensatory damages, and pre- and post-judgment interest.

## EIGHTH CLAIM
### (New York City Human Rights Law – Unlawful Discrimination)

118. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

119. Defendants are employers within the meaning of the NYCHRL.

120. The NYCHRL prohibits an employer from discriminating against an individual because of his creed or national origin. N.Y.C. Admin. Code § 8-107 *et seq.*

121. Defendants subjected plaintiffs to unlawful discrimination based on their national origin and/or religion in violation of the NYCHRL.

122. As a result of defendants' unlawful acts, plaintiffs are entitled to an award of monetary damages, including back and front pay, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

123. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to plaintiffs' rights under the NYCHRL for which plaintiffs are entitled to an award of punitive damages.

## NINTH CLAIM
### (New York City Human Rights Law – Aiding and Abetting)

124. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

125. Defendants are employers within the meaning of the NYCHRL.

126. Defendants subjected plaintiffs to unlawful discrimination based on their national origin and/or religion in violation of the NYCHRL.

127. As a result of defendants' unlawful acts, plaintiffs are entitled to an award of monetary damages, including back and front pay, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

128. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to plaintiffs' rights under the NYCHRL for which plaintiffs are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter a judgment:

      a.    declaring that defendants violated the overtime wage provisions of the FLSA and the NYLL;

      b.    declaring that defendants violated the annual wage notice provisions of the NYLL and WTPA;

      c.    declaring that defendants willfully violated the FLSA and NYLL;

      d.    declaring that defendants intentionally discriminated against plaintiffs in violation of the NYSHRL and the NYCHRL;

      e.    enjoining future violations of the FLSA, NYLL, the NYSHRL, and the NYCHRL by defendants;

      f.    awarding plaintiffs damages for unpaid overtime wages;

      g.    awarding plaintiffs damages in an amount equal to two times the total amount of the wages found to be due, pursuant to the FLSA and to the NYLL;

      h.    awarding plaintiffs damages as a result of defendants' failure to furnish wage notices pursuant to the NYLL;

      i.    awarding plaintiffs pre- and post-judgment interest under the NYLL;

      j.    awarding compensatory damages, including back and front pay, pursuant to the NYSHRL, and the NYCHRL;

      k.    awarding punitive damages pursuant to the NYCHRL;

      l.    awarding plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA, the NYLL, and the NYCHRL; and

  m. awarding such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.

Dated: New York, New York
   January 23, 2017

              PECHMAN LAW GROUP PLLC

              By:   s/ Louis Pechman
                  Louis Pechman
                  Lillian M. Marquez
                  488 Madison Avenue, 11th Floor
                  New York, New York 10022
                  Tel.: (212) 583-9500
                  Fax: (212) 308-8582
                  pechman@pechmanlaw.com
                  marquez@pechmanlaw.com

              MORRISON LAW OFFICES

              By:   s/Arthur Morrison
                  Arthur Morrison
                  Morrison Law Offices
                  1325 Avenue of the Americas, 27th Floor
                  New York, New York 10019
                  Tel.: (914) 980-7244
                  lawnyu63@gmail.com
                  *Attorneys for Plaintiffs*