Case 1:16-cv-00344-HBP   Document 66   Filed 11/01/17   Page 1 of 9

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/1/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

SOHEL CHOWDHURY, et al.,          :
                                          16 Civ. 344 (HBP)
                  Plaintiffs,     :
                                          OPINION
     -against-                    :       AND ORDER

BRIONI AM., INC., et al.,         :

                  Defendants.     :

-----------------------------------X

        PITMAN, United States Magistrate Judge:

        This matter is before me on the parties' joint application to approve their settlement (Docket Item ("D.I.") 64). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

        Plaintiffs commenced this action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law (the "NYLL") to recover allegedly unpaid overtime pay and penalties resulting from defendants' alleged failure to provide wage statements as required by the NYLL. Plaintiffs originally brought the action as a collective action pursuant to 29 U.S.C. § 216(b), but plaintiffs omitted the collective action allegations from their First Amended Complaint (First Amended Complaint dated Jan. 23, 2017 (D.I. 49)).

I presided over an in-person settlement conference among the parties, which was unsuccessful.  However, the parties subsequently reached an agreement on the essential terms of settlement during a short telephone conference, over which I presided.  The parties submitted the proposed settlement agreement for approval on September 15, 2017 (Letter of Louis Pechman, Esq., to the undersigned, dated Sept. 15, 2017 (D.I. 64) ("Pechman Letter"), Ex. 1).

Plaintiffs formerly worked as deliverymen at defendants' menswear shop.  Plaintiffs Chowdhury and Liakat[1] were employees of defendants for approximately 9.8 years and 27 years, respectively.  Plaintiffs each claim that they worked approximately 53 hours per week, but never received overtime premium pay.  Defendants contend that plaintiffs were appropriately compensated for all hours worked.  Defendants also assert that plaintiffs could not have worked the number of overtime hours that they allege because defendants utilized a third-party delivery service to make many of the same deliveries plaintiffs claim to have made.

---

[1] Liakat's employment was terminated on a date that was agreed upon mutually between Liakat and defendants, and was set forth in the agreement (Pechman Letter, Ex. 1 ¶¶ 2, 20).

2

The parties agreed to a total settlement amount of $172,579.20; Chowdhury is to receive $45,581.71 of that amount, while Liakat is to receive $68,160.90 (Pechman Letter, Ex. 1 ¶ 1). Under the terms of the proposed agreement, $22,579.20 of the total amount to be paid to Liakat represents his severance payment for which the Court's approval is not required (Pechman Letter, Ex. 1 ¶¶ 1(a)(v), 6(d)). The remaining settlement amount, $58,836.59, would be paid to plaintiffs' counsel as contingency fees and expenses.[2]

I am unable to approve of the proposed settlement agreement as it currently stands because it contains several proscribed provisions. The proposed agreement contains two provisions that are impermissible: (1) a clause prohibiting plaintiffs from re-employment, or applying for re-employment, with defendants and (2) an unjustified clause requesting that the Court afford confidential treatment to the settlement agreement (Pechman Letter, Ex. 1 ¶¶ 3, 5). See Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898 at *4 n.2 (S.D.N.Y. Apr. 28, 2017) (Pitman, M.J.) ("A court-approved settlement cannot be confidential absent a substantial showing that the need for

---

[2]This amount equates to approximately one-third of the total settlement agreement. Plaintiffs' counsel does not indicate what, if any, expenses they incurred.

3

confidentiality outweighs the presumption of public access."), citing Geskina v. Admore Air Conditioning Corp, 16 Civ. 3096 (HBP), 2017 WL 1162910 at *2 (S.D.N.Y. Mar. 28, 2017) (Pitman, M.J.) and Reynoso v. Norman's Cay Grp. LLC, 15 Civ. 1352 (PAE), 2015 WL 10098595 at *1 (S.D.N.Y. Nov. 23, 2015) (Engelmayer, D.J.); Baikin v. Leader Sheet Metal, Inc., 16 Civ. 8194 (ER), 2017 WL 1025991 at *1 (S.D.N.Y. Mar. 13, 2017) (Ramos, D.J.) (striking down a similar provision barring plaintiffs from ever working, or applying to work, for defendants because it was in direct conflict with FLSA's remedial purpose).

Second, the proposed settlement also contains a general release, under which plaintiffs agree "the Settlement Amount is being paid in satisfaction of all claims that were or could have been asserted by Plaintiffs . . ." (Pechman Letter, Ex. 1 ¶ 1(f)).[3]  Plaintiffs, "on behalf of themselves, their heirs, successors, representatives, assigns, attorneys, agents, executors and administrators ("Releasors")," also agree to release defendants and Releasees[4]

---

[3] Pursuant to Fed.R.Civ.P. 18(a), a party asserting a claim "may join, as independent or alternative claims, as many claims as it has against an opposing party."  Thus, plaintiffs could have asserted any claim in this action that they had against defendants, even if unrelated to wage-and-hour issues, so long as the court had subject matter jurisdiction over those claims.

[4] The proposed settlement defines "Releasees" as,
(continued...)

4

>       from any and all charges, complaints, claims . . .
>       that [plaintiffs] now have, or in the future may or
>       could have against Releases arising out of or relating
>       to any matter of Plaintiffs' employment up to the
>       Effective Date of this Agreement, including any claim,
>       . . ., including, but not limited to any and all tort
>       claims (e.g., assault; battery; false imprisonment;
>       defamation; intentional infliction of emotional
>       distress[)] . . . [and] any and all contract claims

(Pechman Letter, Ex. 1 ¶ 6(a)). Defendants also agree to release some, but not all, of the Releasors. For example, defendants do not release plaintiffs' heirs, although plaintiffs' heirs release defendants and others from a broad array of claims unrelated to wage and hour issues (Pechman Letter, Ex. 1 ¶ 6(b)).

Although the proposed settlement agreement refers to the release as mutual, it is not really mutual. The fact that defendants do not release their claims against all Releasors demonstrates that the release is not truly mutual. Moreover, the agreement releases claims plaintiffs may have against a broad array of persons and entities other than the named defendants, including defendants' former, present and future employees,

---

⁴(...continued)
"defendants' past, present and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, employees, stockholders, representatives, insurers, business managers, accountants, attorneys, heirs, agents, executors and administrators, in their individual and representative capacities, and all persons acting by, through, and under, or in concert with any of these . . ." (Pechman Letter, Ex. 1 ¶ 6(a)).

members, and stockholders, yet it is only the named defendants who release their claims against plaintiffs (Pechman Letter, Ex. 1 ¶ 6(a)). As the release is written, it "could be applied to an absurd effect[.]" Lopez v. Poko St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (Moses, M.J.) (rejecting a release that released a "long list" of entities and persons related to defendants from "every imaginable claim"). For example, taken literally, the release expressly prohibits plaintiffs from commencing an action against one of defendants' former employees for an assault (Pechman Letter, Ex. 6(a)). Such a result is absurd and contrary to the FLSA's remedial purpose. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015) (concluding that the "primary remedial purpose" of the FLSA is "to prevent abuses by unscrupulous employers and remedy the disparate bargaining power between employers and employees"), cert. denied, 136 S. Ct. 824 (2016).

In finding this release in conflict with the remedial purpose of the FLSA, I have not overlooked the fact that some Judges in the Circuit have approved FLSA settlements containing mutual general releases. Souza v. 65 St. Marks Bistro, 15 Civ. 327 (JLC), 2015 WL 7271747 at *5 (S.D.N.Y. Nov. 5, 2015) (Cott, M.J.); accord Cionca v. Interactive Realty, LLC, 15 Civ. 5123 (BCM), 2016 WL 3440554 at *3-*4 (S.D.N.Y. June 10, 2016) (Moses,

6

M.J.); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, D.J.). However, general release provisions are not truly mutual unless the plaintiffs receive a general release from all the persons and entities to whom plaintiffs provide a general release. For example, if defendants seek a general release from plaintiffs in favor of defendants' insurers, the release can be fairly characterized as mutual only if defendants' insurers provide a reciprocal general release in favor of plaintiffs.

The proposed agreement's severability clause cannot salvage the agreement (Pechman Letter, Ex. 1 ¶ 14). In pertinent part, the severability clause provides:

> Should any provision or portion of the Agreement be held invalid or unenforceable, the affected provision shall be modified to the extent necessary to make it legal, valid and enforceable, including Article 3. If it cannot be so modified, it shall be severed from the Agreement and the remainder of this agreement shall remain unaffected and continue in full force and effect, <u>which then shall be interpreted to bar any and all claims any Plaintiffs may have against any Defendants or any Releasee</u>.

(Pechman Letter, Ex. 1 ¶ 14)(emphasis added).[5] In essence, my striking and severing Sections 3 and 5 as impermissible would

---

[5] This provision is silent with respect to what defendants' obligations are concerning any claims that they might have against plaintiffs and Releasors, in the event that a provision in the proposed agreement is stricken (Pechman Letter, Ex. 1 ¶ 14).

7

trigger a general release by plaintiffs of claims unrelated to wage and hour issues against not only defendants but also a broad array of persons and entities that would also stand as an impediment to approval of this settlement. Barbecho v. M.A. Angeliades, Inc., 11 Civ. 1717 (HBP), 2017 WL 1194680 at *2 (S.D.N.Y. Mar. 30, 2017) (Pitman, M.J.) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"). Numerous judges in this Circuit have rejected such non-mutual general releases in FLSA settlement agreements that are not limited to wage-and-hour issues. See Leon-Martinez v. Central Café & Deli, 15 Civ. 7942 (HBP), 2016 WL 7839187 at *1 (S.D.N.Y. Dec. 19, 2016) (Pitman, M.J.)(collecting cases); see Pucciarelli v. Lakeview Cars, Inc., 16-CV-4751 (RRM)(RER), 2017 WL 2778029 at *3 (E.D.N.Y. June 26, 2017) ("[A] [general] release is valid only insofar as it precludes claims that arise from the same facts at issue . . . ."), citing Souza v. 65 St. Marks Bistro, supra, 2015 WL 7271747 at *5. Thus, the severability clause does not permit me to remedy the deficiencies in the proposed agreement, and leaves me no alternative but to reject the proposed settlement.[6]

---

[6] One provision in the proposed agreement that does comport with the remedial purpose of the FLSA is the mutual non-disparagement clause (Pechman Letter, Ex. 1 ¶ 7(a)). In
(continued...)

8

Accordingly, within 30 days of the date of this Order, the parties are to provide the information sought and a revised settlement agreement that eliminates the foregoing issues.

Dated:   New York, New York
         November 1, 2017

SO ORDERED

*/s/ Henry Pitman*
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to

All Counsel

---

[6](...continued)
pertinent part, it states that plaintiffs "shall not publish or communicate to any person or entity, or direct others to publish or communicate to any person or entity, any Disparaging Remarks concerning Defendants" (Pechman Letter, Ex. 1 ¶ 7(a)). Defendants also agree "not to publish or communicate to any person or entity any Disparaging Remarks concerning Plaintiffs and shall not instruct or direct others to do so." Excluded from the definition of Disparraging Remarks are "[t]ruthful statements about the Parties' experiences in litigating their claims and defenses . . ." (Pechman Letter, Ex. 1 ¶ 7(d)). Judges in this District generally approve mutual non-disparagement clauses that include "carve-outs" for truthful statements about the litigation. See Romero v. ABCZ Corp., 14 Civ. 3653 (HBP), 2017 WL 2560004 at *4 (S.D.N.Y. June 12, 2017) (Pitman, M.J.), citing Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015) (Kaplan, D.J.).

9