USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/29/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SOHEL CHOWDHURY, et al.,          :
                                       16 Civ. 344 (HBP)
                 Plaintiffs,      :
                                       OPINION
    -against-                     :    AND ORDER

BRIONI AMERICA, INC., et al.,     :

                 Defendants.      :

----------------------------------X

PITMAN, United States Magistrate Judge:

This matter is before me on the parties' joint applica-
tion to approve their settlement.  All parties have consented to
my exercising plenary jurisdiction pursuant to 28 U.S.C. §
636(c).

Plaintiffs Sohel Chowdhury and Ali Liakat were employed
as deliverymen at defendants' menswear shops located in New York,
New York (First Amended Complaint dated Jan. 23, 2017 (Docket
Item ("D.I.") 49)).  Plaintiffs seek by this action to recover
unpaid overtime premium pay.  The action is brought under the
Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq.,
and the New York Labor Law (the "NYLL").  Plaintiffs also assert
claims based on defendants' failure to provide wage statements as
required by the NYLL and unlawful discrimination pursuant to the
New York State Human Rights Law and the New York City Administra-

tive Code. Although the action was commenced as a collective
action with respect to the FLSA claims, the collective allega-
tions were omitted from plaintiffs' First Amended Complaint (D.I.
49).

Plaintiffs claim that they each worked approximately 53
hours per week, but never received overtime premium pay (Letter
of Louis Pechman, Esq., to the undersigned, dated Sept. 15, 2017
(D.I. 64) ("Pechman Letter")). Plaintiffs claim that defendants'
records will support their allegations. Defendants dispute all
of plaintiffs' claims. Defendants contend that plaintiffs
received all of the overtime premium pay to which they were
entitled. Moreover, defendants claim that they utilized a third-
party delivery service to make many of the same deliveries that
plaintiffs claim to have made, which undercuts plaintiffs'
assertion concerning the number of overtime hours they worked.

I held an in-person settlement conference with the
parties, which was unsuccessful. However, the parties reached an
agreement with respect to the essential terms of settlement
during a subsequent telephone conference, over which I presided.
The parties submitted the proposed settlement agreement for
approval on November 13, 2017.[1] The parties have agreed to

_____

[1]The parties' joint letter (Letter of Francis J. Giambalvo,
(continued...)

2

resolve the dispute for a total settlement of $172,579.20.  The

parties have also agreed that $58,836.59 of that amount will go

to plaintiffs' counsel for out-of-pocket expenses and fees.  The

remaining $113,733.61 will be paid to plaintiffs.  The amount

claimed by each plaintiff[2] and the net amount that each

plaintiff[3] will receive after deduction of legal fees and costs

are as follows:

| Plaintiff | Length of Employment | Amount Claimed | Net Settle-ment Amount |
|---|---|---|---|
| Sohel Chowdhury | 9.8 years | $83,278.20 | $45,581.71 |
| Ali Liakat | 17 years | $105,659.80 | $68,160.90 |

By Opinion and Order, dated November 1, 2017 (D.I. 66),

I declined to approve the previously proposed settlement agree-

ment because it contained several impermissible provisions

---

[1](...continued)
Esq., to the undersigned, dated Nov. 13, 2017 ("Giambalvo
Letter")) requesting judicial approval of the proposed settlement
agreement, appended to the letter as Ex. 1, has not yet been
filed on the public docket.

[2]The amount claimed by each of the plaintiffs includes
allegedly unpaid overtime premium pay and liquidated damages,
exclusive of interest, statutory damages for defendants' alleged
failure to provided wage statements and damages for plaintiffs'
non-wage related claims, including their discrimination claims.

[3]The net settlement amounts listed in the text are the total
amounts to be paid to each plaintiff to settle FLSA and non-FLSA
claims.  The parties have further stipulated that $34,186.27 of
the net settlement amount being paid to Chowdhury and $45,581.70
of the amount being paid to Liakat are being paid to settle their
FLSA claims (Pechman Letter).

(Pechman Letter, Ex. 1)   First, the settlement agreement con-

tained an impermissible general release (Pechman Letter, Ex. 1 ¶

6).   Second, it contained an unjustified clause requesting that

the Court afford confidential treatment to the settlement agree-

ment (Pechman Letter, Ex. 1 ¶ 3).   Third, the settlement agree-

ment contained a clause barring plaintiffs from re-employment, or

applying for re-employment, with defendants (Pechman Letter, Ex.

1 ¶ 5).[4]

        The parties have submitted a renewed application

requesting approval of their revised proposed agreement

(Giambalvo Letter, Ex. 1).

              Court approval of an FLSA settlement is appropriate

              "when [the settlement] [is] reached as a result of
              contested litigation to resolve bona fide disputes."
              Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376
              at *12 (S.D.N.Y. Sept. 16, 2011).   "If the proposed
              settlement reflects a reasonable compromise over
              contested issues, the court should approve the
              settlement."   Id. (citing Lynn's Food Stores, Inc. v.
              United States, 679 F.2d 1350, 1353 n.8 (11th Cir.
              1982).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1

(S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original).

---

        [4]The settlement agreement also contained a severability
clause that precluded me from modifying or striking the
impermissible provisions without triggering an unlawful general
release by plaintiffs of claims unrelated to wage and hour issues
against defendants and a broad array of other persons and
entities (Pechman Letter, Ex. 1 ¶ 14).

"Generally there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein M.J.) (internal quotation marks omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (Ellis, M.J.), citing Lynn's Food Stores, Inc. V. United States, supra 679 F.2d at 1353-54.

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satis-fies these criteria.

5

First, although the net settlement represents approximately 40% of plaintiffs' claimed damages, that fact does not render the settlement deficient. Defendants deny that plaintiffs are entitled to any overtime premium pay. Moreover, defendants claim that plaintiffs could not have worked the number of overtime hours that they allege because defendants utilized a third-party delivery service to make many of the same deliveries plaintiffs claim to have made. As discussed in more detail below, given the risks these issues present, the settlement amount is reasonable.

Second, the settlement will entirely avoid the burden, expense and aggravation of litigation. No depositions have taken place yet. If the case were to proceed, several depositions would need to be taken. The settlement avoids the necessity of conducting this discovery.

Third, the settlement will enable plaintiffs to avoid the risks of litigation. As noted above, defendants dispute the number of hours plaintiffs claim to have worked, citing defendants' use of a third-party delivery service. Plaintiffs, therefore, face the risk that a fact finder may credit defendants. Moreover, defendants take the position that they compensated plaintiffs fully for all work performed. Thus, whether plaintiffs would recover at trial is far from certain. See Bodon

6

v. Domino's Pizza, LLC, 09-CV-2941 (SLT), 2015 WL 588656 at *6
(E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he
question [in assessing the fairness of a class action settlement]
is not whether the settlement represents the highest recovery
possible . . . but whether it represents a reasonable one in
light of the many uncertainties, the class faces . . . ." (inter-
nal quotations marks omitted)), adopted sub nom. by, Bodon v.
Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015);
Massiah v. MetroPlus Health Plan, Inc., 11-cv-05669 (BMC), 2012
WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement
assures immediate payment of substantial amounts to class mem-
bers, even if it means sacrificing speculative payment of a
hypothetically larger amount years down the road, settlement is
reasonable . . . ."  (internal quotation marks omitted)).

          Fourth, because I presided over the settlement confer-
ence and the telephone conference that preceded the settlement, I
know that the settlement is the product of arm's-length bargain-
ing between experienced counsel.  Both counsel represented their
clients zealously at the settlement conference.

          Fifth, there are no factors here that suggest the
existence of fraud.  The settlement was reached after a mediation
before the Court, further negating the possibility of fraud or
collusion.

The settlement agreement also contains a mutual general release (Giambalvo Letter, Ex. 1 ¶ 6).  In my Opinion and Order dated November 1, 2017, I concluded that the general release contained within the previously proposed settlement agreement "[w]as not truly mutual" because plaintiffs did not receive a release from all persons and entities to whom they provided a release from a broad array of claims.  The general release contained in the revised proposed settlement agreement now before me is truly mutual, as plaintiffs receive reciprocal general releases from all persons and entities to whom plaintiffs provide a general release (Giambalvo Letter, Ex. 1, ¶¶ 6(a),(b).  "A general release of the kind proposed in this case, with . . . former employee[s] who ha[ve] no ongoing relationship with the employer, makes sense to bring complete closure."  Geskina v. Admore Air Conditioning Corp., 16 Civ. 3096 (HBP), 2017 WL 1743842 at *3 (S.D.N.Y. May 3, 2017) (Pitman, M.J.), citing Souza v. 65 St. Marks Bistro, 15-CV-327 (JLC), 2015 WL 7271747 at *5 (S.D.N.Y. Nov. 6, 2015) (Cott, M.J.); accord Cionca v. Interactive Realty, LLC, 15 Civ. 5123 (BCM), 2016 WL 3440554 at *3-*4 (S.D.N.Y. June 10, 2016) (Moses, M.J.); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, D.J.).  "Additionally, because the provision was negotiated by competent counsel for

8

both sides, the mutual release is permissible in this case."

Geskina v. Admore Air Conditioning Corp., supra, 2017 WL 1743842

at *3, citing Souza v. 65 St. Marks Bistro, supra, 2015 WL

7271747 at *5; accord Cionca v. Interactive Reality, LLC, supra,

2016 WL 3440554 at *4; Lola v. Skadden, Arps, Meagher, Slate &

Flom LLP, supra, 2016 WL 922223 at *2.

      The proposed agreement omits the unjustified confiden-

tiality clause that the previous agreement contained (Pechman

Letter, Ex. 1 ¶ 3).  However, in its place, the parties have

inserted a non-publication clause (Giambalvo Letter, Ex. 1 ¶ 3).

In pertinent part, the non-publication clause provides

> Plaintiffs and [p]laintiffs' [c]ounsel agree that
> they will not in any manner publicize the terms of this
> Settlement Agreement, which includes notifying any
> member of the media regarding the terms and conditions
> of the Settlement Amount or Agreement and posting or
> disseminating the terms and conditions of the
> Settlement Amount or Agreement on any social media . .
> . . Such prohibition extends to dissemination of any
> information, whether oral, electronic or in any
> document form . . .

(Giambalvo Letter, Ex. 1 ¶ 3).  If asked, plaintiffs "may state

that the matter[] has been settled to the satisfaction of the

parties" (Giambalvo Letter, Ex. 1 ¶ 3).  The clause also provides

that "nothing herein shall preclude plaintiffs from divulging any

information to any agency of the federal, state or local govern-

ment or court pursuant to court order and/or subpoena . . ."
(Giambalvo Letter, Ex. 1 ¶ 3).

In Lola v. Skadden, Arps, Slate, Meagher & Flom LLP,
supra, 2016 WL 922223 at *2, plaintiffs and their counsel agreed
to a similar provision; the Honorable Richard J. Sullivan, United
States District Judge, concluded that it was permissible.[5]
Stating as a preliminary matter that "the fairness of restric-
tions on the parties' ability to disclose details of a settlement
depends on the particular circumstances of any case," Judge
Sullivan found it significant that the non-disclosure provision
did not "unduly restrict plaintiff's ability to discuss the
settlement" because the settlement was available on the public
docket and the plaintiffs were "free to decline commenting on the
case in response to any future inquiries by the press or other-
wise." Lola v. Skadden, Arps, Slate, Meagher & Flom LLP, supra,
2016 WL 922223 at *2; accord See Flores v. Studio Castelano
Architect, P.C., 15-cv-9158 (TPG), 2017 WL 4417697 at *3
(S.D.N.Y. Oct. 2, 2017) (Griesa, D.J.) (finding non-disclosure

---

[5]In Lola v. Skadden, Arps, Slate, Meagher & Flom LLP, supra,
2016 WL 922223 at *2, plaintiffs and their counsel agreed that
they would "not contact the media or utilize any social media
regarding th[e] [s]ettlement or its terms," and that, in the
event they were contacted, they would "respond 'no comment' or be
limited solely to words to the following effect:  The matter has
been resolved."

10

provision permissible where it had "none of the hallmarks of the overly-broad provisions rejected by courts in this Circuit, such as an all-encompassing non-disparagement clause"), citing Ramirez v. Greenside Corp., 16-civ-729 (HBP), 2017 WL 880878 at *2 (S.D.N.Y. Mar. 3, 2017) (Pitman, M.J.). Judge Sullivan also found it significant that the non-disclosure clause was the result "of fair bargaining between well-represented parties and embodies reasonable compromise." Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, supra, 2016 WL 922223 at 2.

Similar circumstances here also lead to the conclusion that the non-disclosure clause in the proposed settlement agreement does not conflict with the FLSA's remedial purposes (Giambalvo Letter, Ex. 1 ¶ 3). The settlement agreement will be available on the public docket to anyone with an interest in reading it. Plaintiffs are also free to decline commenting on the case if members of the press should inquire (Giambalvo Letter, Ex. 1 ¶ 3). Additionally, under the non-disparagement clause, discussed in greater detail below, plaintiffs are permitted to make truthful statements about the parties' experiences in litigating their claims and defenses (Giambalvo Letter, Ex. 1 ¶ 7(d)). See Flores v. Studio Castelano Architect, P.C., supra, 2017 WL 4417697 at *3 (finding that one of the "hallmarks" of an

11

impermissible non-disclosure provision is an "all-encompassing non-disparagement clause").

The settlement agreement also contains a clause prohibiting plaintiffs from re-employment, and seeking re-employment, with defendant Brioni America, Incorporated ("Brioni") (Giambalvo Letter, Ex. 1 ¶ 5)

In my Opinion and Order dated November 1, 2017, I found that a similar provision was impermissible because it was highly restrictive and in conflict with the remedial purposes of the FLSA (D.I. 66). See Fu v. Mee May Corp., 15 Civ. 4549 (HBP), 2017 WL 2172910 at *3 (S.D.N.Y. Mar. 31, 2017) (Pitman, M.J.)("Even if the parties have irreconcilable differences as they claim, a provision limiting plaintiffs' employment opportunities is unacceptable." (internal quotation marks omitted)); Baikin v. Leader Sheet Metal, Inc., 16 Civ. 8194 (ER), 2017 WL 1025991 at *1 (S.D.N.Y. Mar. 13, 2017) (Ramos, D.J.) (concluding that a provision making plaintiff ineligible for rehire with defendants as "highly restrictive" and in "strong tension with the remedial purposes of the FLSA").

The parties argue that the revised provision is permissible because plaintiffs have agreed to it in consideration of

12

their resolution of plaintiffs' discrimination claims only.[6]   The

revised provision states, in pertinent part, that plaintiffs

"understand that this provision is intended to protect Brioni

from allegations of retaliation and . . . is being agreed to only

in consideration of the parties' resolution of discrimination

claims made by plaintiffs" (Giambalvo Letter, Ex. 1 ¶ 5).   In

addition, the provision expressly states that plaintiffs "shall

not be prevented from seeking work or employment with any of

Brioni's other affiliates or parent companies," which includes

named defendant Brioni America Holding, Inc.

---

[6]The parties also argue that, because plaintiffs can seek
re-employment with Brioni's parent and affiliate companies, the
provision is sufficiently narrow such that it can be reconciled
with the FLSA's remedial purposes.   Some Courts in this Circuit
have held that a provision in an FLSA settlement that makes
plaintiff ineligible for re-hire at some, but not all, of
defendant's establishments creates only a "minimal impact" on
plaintiff's future career opportunities and, therefore, is
permissible.   See Carino v. B.A. Deli Mart, Inc., 15 Civ. 9854
(ER), 2017 U.S. Dist. LEXIS 105360 at *2-*3 (S.D.N.Y. July 5,
2017) (Ramos, D.J.)(finding similar provision permissible where
ban on plaintiff's re-hire applied to only one of several of
defendants' delis); Flores v. Food Express Rego Park, Inc., 15 CV
1410 (KAM)(SMG), 2016 WL 386042 at *2 (E.D.N.Y. Feb. 1, 2016)
(finding similar provision minimally impacted plaintiff's future
employment opportunities where defendant represented that
plaintiff was prohibited from re-hire at one of defendant's two
restaurants).

The parties have not provided sufficient information to
enable me to determine whether such a provision would only
minimally impact plaintiffs' future career opportunities.   The
parties have made no representations concerning the nature of
Brioni's parent and affiliate businesses.

Plaintiffs' discrimination claims, unlike their FLSA claims, do not require judicial approval. See Santos v. Yellowstone Properties, Inc., 15 Civ. 3986 (PAE), 2016 WL 2757427 at *3 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.). Judges in this District routinely approve "bifurcated settlement agreement[s], in which the parties submit their FLSA agreement for court review and approval . . . but enter into a separate [agreement]" that addresses the non-FLSA claims, which does not require judicial and may contain provisions that would be impermissible under Cheeks. Ortiz v. Breadroll, LLC, 16-CV-7998 (JLC), 2017 WL 2079787 at * 2 (S.D.N.Y. May 15, 2017); accord Yunda v. Safi-G, Inc. 15-CV-8861 (HBP), 2017 WL 1608898 at *2 (S.D.N.Y. Apr. 28, 2017) (Pitman, M.J.) (approving the submission of two settlement agreements, one resolving plaintiff's FLSA claims that required court approval under Cheeks and the other resolving plaintiff's claims under the NYLL that did not require approval under Cheeks and containing a confidentiality clause); Santos v. Yellowstone Properties, Inc., supra, 2016 WL 2757427 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.) (approving the submission of two settlement agreements, one resolving plaintiffs FLSA claims and the other resolving plaintiff's discrimination claims and containing a general release); Abrar v. 7-Eleven, Inc., 14-CV-6315 (ADS)(AKT),

14

2016 WL 1465360 at *1 (E.D.N.Y. Apr. 14, 2016) (approving similar structure).

The parties have expressly allocated a portion of the settlement funds for the resolution of plaintiffs' non-FLSA damages, including damages related to plaintiffs' discrimination claims.  Specifically, $11,395.44 and $22,579.20 of the net settlement amount to be paid Liakat and Chowdhury, respectively, represents payment for non-FLSA damages, including damages related to their claims of unlawful discrimination (Giambalvo Letter, Ex. 1 ¶ 1(a)(i)-(v)).  Furthermore, plaintiffs have explicitly agreed to refrain from seeking re-employment with Brioni "in consideration of the [p]arties' resolution of the discrimination claims" only (Giambalvo Letter, Ex. 1 ¶ 5).  The mere fact that the parties have memorialized the settlement of their FLSA and non-FLSA claims in a single document should not render that settlement deficient.  The formalism of two agreements does not play a significant role in "prevent[ing] abuses by unscrupulous employers [or] remedy[ing] the disparate bargaining power between employers and employees," especially where, as here, plaintiffs are represented by competent counsel.  Cheeks v. Freeport Pancake House, Inc., supra, 796 F.3d at 207.  Accordingly, the provision deeming plaintiffs ineligible for re-hire at Brioni's menswear shops does not require my approval.

15

The proposed agreement also contains a mutual non-disparagement clause (Giambalvo Letter, Ex. 1 ¶ 7).  It provides that plaintiffs agree not to "publish or communicate to any person or entity, or direct others to publish or communicate to any person or entity, any Disparaging Remarks concerning Defendants" (Giambalvo Letter, Ex. 1 ¶ 7).  The provision also provides that "[t]ruthful statements about the parties' experiences in litigating their claims and defenses" do not fall under the definition of "Disparaging Remarks," for purposes of the settlement (Giambalvo Letter, Ex. 1 ¶ 7).  Where, as here, a mutual non-disparagement clause includes a carve out for truthful statements about the litigation, it is permissible.  See Romero v. ABCZ Corp., 14 Civ. 3653 (HBP), 2017 WL 2560004 at *4 (S.D.N.Y. June 12, 2017) (Pitman, M.J.); Lopez v. Nights of Cabria, LLC, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015) (Kaplan, D.J.); accord Weng v. T&W Rest., Inc., 15 Civ. 8167 (PAE)(BCM), 2016 WL 3566849 at *4 (S.D.N.Y. June 22, 2016) (Moses, M.J.); see Lopez v. Ploy Dee, Inc., 15 Civ. 647 (AJN), 2016 WL 1626631 at *3 (S.D.N.Y. Apr. 21, 2016) (Nathan, D.J.).

Finally, pursuant to a retainer agreement signed by plaintiffs, plaintiffs' counsel will receive one third of the settlement proceeds, exclusive of counsel's out-of-pocket costs, for contingency fees.  Contingency fees of one-third in FLSA

16

cases are routinely approved in this Circuit. <u>Santos v. EL Tepeyac Butcher Shop Inc.</u>, 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), <u>citing</u> <u>Zhang v. Lin Kumo Japanese Rest. Inc.</u>, 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) <u>and</u> <u>Thornhill v. CVS Pharm., Inc.</u>, 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); <u>Rangel v. 639 Grand St. Meat & Produce Corp.</u>, 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement and noting that such agreement "is routinely approved in this Circuit"); <u>Febus v. Guardian First Funding Grp., LLC</u>, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); <u>accord</u> <u>Calle v. Elite Specialty Coatings Plus, Inc.</u>, 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); <u>Palacio v. E*TRADE Fin. Corp.</u>, 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freman, M.J.).

Accordingly, for all the foregoing reasons, I approve the settlement in this matter. In light of the settlement, the

17

action is dismissed with prejudice and without costs.   The Clerk

is respectfully requested to mark this matter closed

Dated:     New York, New York
           November 29, 2017

                                    SO ORDERED

                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

All Counsel